**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-23893-BLOOM/Elfenbein**

EL TORO LOCO CHURRASCARIA, LLC,
and ETLC TRADEMARKS, LLC,

      Plaintiffs,

v.

LA VACA LOCA CHURRASQUERIA, LLC,
and LOURDES BLANCO,

      Defendants.

_____/

## OMINBUS ORDER

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Default Final Judgment and Permanent Injunction, ECF No. [34], and Defendants' Motion to Set Aside Clerk's Default, ECF No. [38]. The Court has reviewed the Motions, the supporting and opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, Defendants' Motion is denied, and Plaintiffs' Motion is granted.

### I.    BACKGROUND

On August 29, 2025, Plaintiffs El Toro Loco Churrascaria, LLC and ETLC Trademarks, LLC initiated this action against Defendants La Vaca Loca Churrasqueria, LLC and Lourdes Blanco for federal and state trademark infringement, dilution under Fla. Stat. § 495.151, unjust enrichment, and violations of Florida's Deceptive and Unfair Trade Practices Act.  ECF No. [1]. On February 23, 2026, this Court granted Defendants' counsel's Motion to Withdraw and required Defendants to obtain new counsel by March 16, 2026. ECF No. [26]. Defendants failed to retain new counsel or file a notice of intent to proceed *pro se* and a Clerk's Entry of Default was entered on March 24, 2026. On April 8, 2026, Plaintiffs filed a Motion for Default Judgment, ECF No.

[34], and on April 22, 2026, Defendants filed a Motion to Set Aside Clerk's Entry of Default, ECF No. [38].

## II.   LEGAL STANDARD

### A.  Standard to Set Aside Clerk's Entry of Default

Rule 55(c) of the Federal Rules of Civil Procedure provides that the Court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "Good cause" is a "mutable" and "liberal" standard, "varying from situation to situation" depending on the facts of a given case. *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). The good cause standard that is utilized in setting aside an entry of default is less rigorous than the required showing to set aside a default judgment. *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990). Further, the Eleventh Circuit maintains a "strong policy of determining cases on their merits and we, therefore, view defaults with disfavor." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). In considering whether to set aside a clerk's entry of default, "[c]ourts have considered whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Compania Interamericana*, 88 F.3d at 951.

### B.  Default Judgment

If a defendant fails to plead or otherwise defend a complaint filed against it, the Clerk of Court may enter a default against that party. *See* Fed. R. Civ. P. 55(a). Once a default is entered, a plaintiff may seek entry of a default judgment against the defaulting defendant. *See* Fed. R. Civ. P. 55(b). This Circuit maintains a "strong policy of determining cases on their merits and [ ] therefore view[s] defaults with disfavor." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). Nonetheless, default judgment is entirely appropriate and within the district court's sound discretion to render where the defendant has failed to defend or otherwise engage in

2

the proceedings. *See, e.g., Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 910 (11th Cir. 2011); *Dawkins v. Glover*, 308 F. App'x 394, 395 (11th Cir. 2009); *In re Knight*, 833 F.2d 1515, 1516 (11th Cir. 1987); *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985). By defaulting, a defendant is taken to admit the well-pleaded allegations of fact in a plaintiff's complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

A defendant's "failure to appear and the Clerk's subsequent entry of default against him do[es] not automatically entitle Plaintiff to a default judgment." *Capitol Records v. Carmichael*, 508 F. Supp. 2d 1079, 1083 (S.D. Ala. 2007). Indeed, a default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004), but instead acts as an admission by the defaulted defendant as to the well-pleaded allegations of fact in the complaint. *See Eagle Hosp. Physicians, LLC*, 561 F.3d at 1307 ("A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citations omitted)); *GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs., Ltd.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) (default judgment is appropriate only if court finds sufficient basis in pleadings for judgment to be entered, and that complaint states a claim). Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the plaintiff is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Sandler v. Michael Maxwell Grp., LLC*, No. 6:19-cv-1688-Orl-41GJK, 2019 WL 7461690, at *2 (M.D. Fla. Dec. 13, 2019), report and recommendation adopted, No. 6:19-cv-1688-Orl-41GJK, 2020 WL 42867 (M.D. Fla. Jan. 3, 2020). Moreover, although facts are admitted as true, conclusions of law are not sufficient; a basis to state a claim must still exist in the pleadings before a court may enter a default judgment. *Nishimatsu Const. Co., Ltd.*, 515 F.2d at 1206. Therefore, before granting default judgment, "the district court must ensure that the well-pleaded allegations of the complaint ... actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007).

III.   **DISCUSSION**

    **A. Motion to Set Aside Clerk's Entry of Default**

Defendants indicate they never received notice of the Court's Order which required Lourdes Blanco to either retain new counsel or file a notice of intent to proceed *pro se* and required La Vaca Loca Churrasqueria, LLC to retain new counsel. ECF No. [38] at 2. Defendants contend they have not violated a court order because they received no notice of that order. Defendants point out they are not native speakers of the English language and have always defended this case on the merits, including filing an Answer and Affirmative Defenses, Joint Scheduling Report, and a Joint Motion for Protective Order. *Id*.

Plaintiffs respond that Defendants have shown reckless disregard for the litigation process and cite prior counsel's Motion to Withdraw in which prior counsel represents that Defendants

have ceased communicating with him and have not responded to multiple attempts to confer. ECF No. [40] at 5 (citing ECF No. [25] at 2). Moreover, Plaintiffs point out that prior counsel represented he informed Defendants that their failure to obtain new counsel would result in adverse consequences. *Id*. Plaintiffs contend they would suffer prejudice if the Court sets aside the default because they are being damaged by Defendants' unlawful infringement of Plaintiffs' registered trademarks and Plaintiffs have expended time and expense attempting to "prosecute this lawsuit". *Id*.

Defendants have failed to establish good cause to set aside the Clerk's Entry of Default under Rule 55(c). Here, the Defendants have shown a willful disregard for the judicial proceedings. Prior counsel represented to the Court that he informed Defendants that they remain responsible for complying with all court orders and deadlines, and he advised Defendants that their failure to obtain new counsel would result in adverse consequences. ECF No. [27] at 2. Moreover, the Court and prior counsel informed La Vaca Loca Churrasqueria, LLC., that, as a limited liability company, it *must* be represented by counsel. Collectively, Defendants chose to ignore prior counsel's advice and neglected this Court's deadlines.

"[I]f f a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." *Compania*, 88 F.3d at 951–52 (citing *Shepard Claims Service, Inc. v. William Darrah & Associates*, 796 F.2d 190, 194–95 (6th Cir. 1986). As such, Defendants' Motion, ECF No. [34], is denied.

**B.  Motion for Default Final Judgment and Permanent Injunction**

Plaintiffs, El Toro Loco Churrascaria, LLC and ETLC Trademarks, LLC initiated this action against Defendants La Vaca Loca Churrasqueria, LLC and Lourdes Blanco for federal and state trademark infringement, dilution under Fla. Stat. § 495.151, unjust enrichment, and violations of Florida's Deceptive and Unfair Trade Practices Act.

The Complaint alleges that Defendants are direct competitors of Plaintiffs and offer goods and services which overlap with those provided by Defendant El Toro Loco Churrascaria, LLC. Plaintiffs allege that Defendants are infringing on Plaintiffs' trademarks for which Plaintiff ETLC Trademarks, LLC has received and/or applied for Federal Trademark Registrations. Specifically, Plaintiffs allege that Defendants use the mark "LA VAVA LOCA CHURRASQUERIA" which closely resembles Plaintiffs' protected marks and is likely to cause customer confusion.

In the Motion for Default Judgment and Permanent Injunction, Plaintiffs seeks entry of default final judgment against Defendants, and request that the Court (1) enjoin Defendants' unlawful use of Plaintiffs' trademarks, and (2) award Plaintiffs damages, costs, and attorney's fees. *See generally* ECF No. [34].

### i.   Facts

Defendant El Toro Loco Churrascaria, LLC ("El Toro Loco") provides a wide range of high-quality culinary goods and services to consumers throughout Miami-Dade County, Florida and operates, *inter alia*, Brazilian BBQ Steakhouses, restaurants, food trucks, bars, take-outs, home delivering, catering, and a ranch. El Toro Loco has spent years building and protecting its brand.

Defendant ETLC owns and/or has applied for the following Federal Trademark Registrations (collectively the "Protected Marks"):

| Trademark | Description |
|---|---|
| | Federal Trademark Registration No. 4900365, for the mark EL TORO LOCO CURRASCARIA Registered on February 16, 2016, that covers services in class 043 for providing of food and drink via mobile truck.<br>This registration is incontestable. |

6

| | |
|---|---|
|  | Federal Trademark Registration No. 5642537, for the mark EL TORO LOCO CURRASCARIA Registered on January 1, 2019, that covers services in class 043 for catering services; mobile catering; providing of food and drink via a mobile truck; restaurant services; restaurant services, including sit-down service of food and take-out restaurant services; restaurant and bar services; restaurant, bar and catering services; take-out restaurant services; restaurants featuring home deliver. This registration is incontestable. |
|  | Federal Trademark Registration No. 5785128, for the mark EL TORO LOCO Registered on June 25, 2019, that covers good and services in class 030 for Barbecue sauce; Barbeque sauce; Chimichurri sauce; garlic-based sauces; grilling sauces; hot sauce; Pico de Gallo sauce; ready-made sauces; sauces for barbecued meat; steak sauce, and in class 043 for catering services; mobile catering, providing of food and drink via a mobile truck; restaurant services; restaurant services, including sit-down service of food and take-out restaurant services; restaurant and bar services; restaurant, bar and catering services; take-out restaurant services; restaurants featuring home delivery. |
| EL TORO LOCO | Federal Trademark Registration No. 5665531, for the wordmark EL TORO LOCO Registered on January 29, 2019, that covers services in class 043 for catering services; mobile catering; providing of food and drink via mobile truck; restaurant services; restaurant services including sit-down service of food and take-out restaurant services; restaurant and bar services; restaurant, bar and catering services; take-out restaurant services; providing of food and drink via stationary food trailer. This registration is incontestable. |

| | |
|---|---|
|  | Federal Trademark Application filed June 4, 2025 for the word mark EL TORO LOCO RANCH having Serial Number 99218288 that covers services in class 043 including Bistro services; Cafe services; Catering services; Providing of food and drink via a mobile truck; Restaurant, bar and catering services; Mobile catering; Restaurant services; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant and bar services; Take-out restaurant services; Restaurants featuring home delivery; Providing of food and drink via stationary food trailer. |
| EL TORO LOCO RANCH | Federal Trademark Application filed June 4, 2025 for the wordmark EL TORO LOCO RANCH having Serial Number 98061220 that covers services in class 043, including Bistro services; Cafe services; Catering services; Providing of food and drink via a mobile truck; Restaurant, bar and catering services; Mobile catering; Restaurant services; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant and bar services; Take-out restaurant services; Restaurants featuring home delivery; Providing of food and drink via stationary food trailer. |
|  | Federal Trademark Application filed May 28, 2025 for the mark EL TORO LOCO STEAKHOUSE having Serial Number 99206248 that covers services in class 020, 037, 040, 042, 043, including, *inter alia*, including Bistro services; Cafe services; Catering services; Providing of food and drink via a mobile truck; Restaurant, bar and catering services; Mobile catering; Restaurant services; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant and bar services; Take-out |

| | |
|---|---|
| | restaurant services; Restaurants featuring home delivery; Providing of food and drink via stationary food trailer. |
| EL TORO LOCO STEAKHOUSE | Federal Trademark Application filed May 23, 2025 for the wordmark EL TORO LOCO STEAKHOUSE having Serial Number 99199973 that covers services in class 020, 037, 040, 042, 043, including, *inter alia*, including Bistro services; Cafe services; Catering services; Providing of food and drink via a mobile truck; Restaurant, bar and catering services; Mobile catering; Restaurant services; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant and bar services; Take-out restaurant services; Restaurants featuring home delivery; Providing of food and drink via stationary food trailer. |

The Protected Marks include the following registrations which are incontestable:

| | |
|---|---|
| EL TORO LOCO | Registration Number 5665531 (Section 8 and 15) |
| | Registration Number 4900365 (Section 8 and 15) |

|  | Registration Number 5642537<br>(Section 8 and 15) |
|---|---|

The Protected Marks are used in connection with El Toro Loco providing high-quality culinary goods and services to consumers. El Toro Loco has been operating in Miami-Dade County, Florida and using its trademarks in commerce for over a decade, since at least as early as December 1, 2015.  Long before Defendants began their infringing activities complained of herein, the Protected Marks have been used by El Toro Loco in commerce to identify and distinguish its high-quality goods and services and serve as symbols of El Toro Loco's quality, reputation, and goodwill. El Toro Loco extensively uses, advertises, and promotes the Protected Marks in connection with the sale of its high-quality goods and services.

The business of La Vaca Loca directly competes with the business of El Toro Loco. La Vaca Loca markets and operates a farm, a restaurant, an eatery and provides catering services. The nature of La Vaca Loca's goods and services overlap with those provided by El Toro Loco. La Vaca Loca uses a confusingly similar mark "LA VACA LOCA CHURRASQUERIA", which closely resembles Plaintiffs' Protected Marks without authorization. This unauthorized use of the LA VACA LOCA CHURRASQUERIA mark is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, or affiliation of Defendants' goods and services. Furthermore, Defendants filed two Federal Trademark Applications with the US Trademark Office (the "La Vaca Marks"). These applications seek federal protection for:

10

a.      The mark LA VACA LOCA CHURRASQUERIA having serial number 99104735 in class 035 for retail vending stand services featuring FRUIT, VEGETABLES, CANDIES, AND OTHER EDIBLE GOODS; Retail store services featuring FRUITS, VEGETABLES, CANDIES, AND OTHER EDIBLE GOODS supplies; and

b.      The mark LA VACA LOCA FARM and having serial number 99104757 in class 035 for Retail vending stand services featuring FRUIT, VEGETABLES, CANDIES, AND OTHER EDIBLE GOODS; Retail store services featuring FRUITS, VEGETABLES, CANDIES, AND OTHER EDIBLE GOODS.

On April 23, 2025, Plaintiffs sent Defendants a Notice to Cease and Desist the unauthorized use of the La Vaca Loca Marks, which bears a similarity in commercial impression, linguistic construction, and thematic branding to Plaintiffs' Protected Marks and is therefore likely to cause consumer confusion. Despite this demand, La Vaca Loca, has refused to cease the use of the La Vaca Loca Marks and continue to infringe on Plaintiffs' Protected Marks.

### ii.  Discussion

### A.  Trademark and Infringement and False Designation of Origin

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement when a defendant uses in commerce and without consent of the registrant any reproduction, counterfeit, or colorable imitation of a registered mark "which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. To prevail on a trademark infringement claim, Plaintiff must demonstrate that (1) it had prior rights to the mark; and (2) defendants adopted a mark or name that was the same, or confusingly similar to Plaintiff's mark, such that consumers were likely to confuse the two. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001).  Additionally, the elements of common law and statutory trademark infringement are the same and claim of unfair competition or false designation

of origin premised on alleged trademark infringement is practically identical to an infringement claim. *Guantanamera Cigars Co. v. SMCI Holding, Inc.*, No. 21-cv-21714, 2022 U.S. Dist. LEXIS 78513, at \*13 (S.D. Fla. Apr. 29, 2022) (citing *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1025-26 and n.14 (11th Cir. 1989)).

The Eleventh Circuit uses a seven-factor test to determine likelihood of confusion. *See Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1506 (11th Cir. 1985). These factors are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion. *Safeway Store, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1164 (11th Cir. 1982). The seven factors listed are to be weighed and balanced and no single factor is dispositive. *Ross Bicycles*, 765 F.2d at 1508.

Plaintiffs have demonstrated that, through their well-pled allegations and Defendants' admittance of those allegations through Default, Plaintiffs' own valid and existing rights to each of the Protected Marks and established prior rights.  Defendants improperly and unlawfully used the Protected Marks or confusingly similar marks and Defendants' unlawful use created a likelihood of confusion, mistake, and deception among the general public, and confusion as to the origin or sponsorship of the products offered by Defendant La Vaca Loca. Plaintiffs are entitled to judgment for trademark infringement against Defendants as to Counts I and II of the Complaint. Plaintiffs are also entitled to entry of judgment as to Count III, False Designation of Origin against Defendants.

**B. Dilution Claim Pursuant to Florida Statute § 495.151**

To prove a dilution claim under Fla. Stat. § 495.151, the plaintiff must show: (1) the plaintiff's mark is famous; and (2) the defendant is commercially using a designation that

resembles the plaintiff's mark in a way that is likely to (a) cause a reduction in the mark's distinctiveness; or (b) tarnish the mark's image. *Tortoise Island Homeowners Ass'n v. Tortoise Island Realty*, 790 So. 2d 525, 535 (Fla. 5th DCA 2001).

The Protected Marks acquired distinctiveness within Florida from their filing with the United States Patent and Trademark Office, standing as recognized symbols of El Toro Loco's offered products ingrained in the public eye to consumers across Florida. Plaintiffs have consistently utilized the Protected Marks in connection with the goods and services offered for sale by El Toro Loco over an extended duration, affirming their continued association with El Toro Loco's offerings. Defendants' unauthorized use of the Protected Marks dilutes El Toro Loco's brand recognition and creates confusion among consumers. Defendants' commercial use of the Protected Marks reduces Plaintiffs' Protected Marks distinctiveness and tarnishes their value within the marketplace.

Accordingly, Plaintiffs are entitled to judgment against Defendants as to Count IV of the Complaint.

### C. Violations of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA)

To prevail on a FDUTPA claim, a plaintiff must allege "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2026)).

Plaintiffs have demonstrated through their well-pled allegations and declarations that Defendants' actions constitute a deceptive act or unfair trade practice. Specifically, Defendants intentionally and continuously infringe on Plaintiffs' Protected Marks and have gained a competitive advantage based on such unauthorized use. Plaintiffs have been harmed by Defendants' unfair methods of competition and unlawful practices, including suffering actual

damages.  Plaintiffs have demonstrated entitlement to the relief sought in Count V, including all attorney fees and costs as permitted by the statute.

### D.  Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must show: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying value for it. *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1161 (11th Cir. 2019).

Defendants have benefited from their unauthorized use of Plaintiffs' Protected Marks and benefited from Plaintiffs' reputation, goodwill, and customers who incorrectly believed that Defendants' goods and services were endorsed or approved by Plaintiffs.  Plaintiffs have spent years building, marketing, and protecting their brand. The circumstances are such that it would be inequitable for Defendants to retain the benefit they received for their unauthorized use of Plaintiffs' Protected Marks without compensating Plaintiffs.

### E.  Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See*, e.g., *PetMed Express, Inc*., 336 F. Supp. 2d at 1222-23.

Permanent injunctive relief is appropriate where a plaintiff demonstrates (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008). Plaintiffs have carried their burden as to each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Plaintiffs are suffering, and will continue to suffer, irreparable injury if Defendants' infringing activities are not permanently enjoined because they have demonstrated a likelihood of confusion. In trademark cases, "a sufficiently strong showing of likelihood of confusion ... may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998).

Additionally, Plaintiffs have no adequate remedy at law so long as Defendants continue to use the Protected Marks, because Plaintiffs will have no control over how their Protected Marks are presented to consumers in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiffs' reputation and goodwill which will result if Defendants' infringing actions are allowed to continue.

Finally, the public has an interest in the issuance of a permanent injunction against Defendants in order to prevent consumers from being misled by Defendants. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior." (alteration added) (citation omitted)); *BellSouth Adver. & and Publ'g. Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991) (holding "[i]n a trademark infringement or unfair competition case, a third party, the consuming public is present and its interests are paramount.") Ultimately, the permanent injunction will prevent consumer confusion and deception in the marketplace, and will

15

protect Plaintiffs' property interest in its trademarks, which are the touchstones of trademark law.

### F.  Damages, Attorney's Fees, and Costs

This Court is authorized to award Plaintiffs damages, costs, and attorney's fees.  15 U.S.C. §1117(a).  The award of attorney's fees is within the Court's discretion if Defendants' conduct is deliberate and willful. Indeed, the court has the discretion to award attorney's fees in exceptional cases. 15 U.S.C. §1117(a).  Pursuant to Fla. Stat. §495.141, Plaintiffs are entitled to Defendants' profits derived from Defendants' wrongful conduct and their costs related to this action. Pursuant to Fla. Stat. §501.2105, the prevailing party to a cause of action brought pursuant to FDUTPA is entitled to the award of attorney's fees.

Here, Plaintiffs are entitled to damages, costs, and an award of attorney's fees pursuant to Fla. Stat. §501.2105 and 15 U.S.C. §1117.

Regarding attorney's fees, first, pursuant to Fla. Stat. §501.2105, the prevailing party is entitled to an award of attorney's fees.  As the prevailing party, Plaintiffs are entitled to this award. Plaintiffs have incurred $730.04 in costs and $27,577.70 in attorney's fees in connection with this action. ECF Nos. [34-3] ¶¶ 10, 14; [34-4] ¶¶ 11, 15. As for damages, Plaintiffs have expended $250,000 to "restore its brand clarity and correct damage done by Defendants' bad acts." ECF No. [34-2] ¶ 29.

Additionally, in trademark infringement cases, the Court may award attorney's fees in exceptional cases.  "The Eleventh Circuit has defined an exceptional case as a case that can be characterized as malicious, fraudulent, deliberate, and willful." *PetMed Express, Inc. v. MedPets.com, Inc*., 336 F. Supp. 2d 1213, 1222 (S.D. Fla. 2004). Here, Defendants' actions were, at the least, deliberate and willful.  Plaintiffs alerted Defendants to their infringing behavior on April 23, 2025 in a Notice to Cease and Desist.  Despite this warning, Defendants continued their

infringing behavior.  Additionally, willfulness may be inferred from the Defendants' default. *See*

*PetMed Express, Inc.*, 336 F. Supp. 2d at 1217.  Accordingly, Plaintiffs are also entitled to an

award of attorney's fees pursuant to 15 U.S.C. §1117.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion, **ECF No. [38]**, is **DENIED**.

2. Plaintiffs' Motion, **ECF No. [34]**, is **GRANTED**.

3. Defendants are permanently restrained and enjoined from infringing, or diluting Plaintiffs' Protected Marks, using the name/mark "La Vaca Loca Churrasqueria" and "La Vaca Loca Farm," and as further set forth in the Court's Final Default Judgment and Permanent Injunction.

4. Plaintiffs are hereby awarded attorney's fees in the amount of $27,577.70, costs in the amount of $730.04, and damages to Plaintiffs in the amount of $250,000.00.

5. The Court's Final Judgment and Permanent Injunction will be entered by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 15, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record